UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GARY CARTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:15-cv-01186 |
| | ) | Judge Aleta A. Trauger |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, EASTMAN CHEMICAL | ) | |
| COMPANY WELFARE BENEFIT | ) | |
| PROGRAM, and EASTMAN CHEMICAL | ) | |
| COMPANY, as Plan Administrator for the | ) | |
| EASTMAN CHEMICAL COMPANY | ) | |
| WELFARE BENEFIT PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court is plaintiff Gary Carty's Motion for Attorneys Fees (Docket No. 58), to which defendant Eastman Chemical Company ("Eastman") has filed a Response (Docket No. 62), defendant Metropolitan Life Insurance Company ("MetLife") has filed a Response incorporating Eastman's arguments by reference (Docket No. 63), and Carty has filed a Reply (Docket No. 67). For the reasons discussed herein, Carty's motion will be granted in an amount as reduced by the court, and Carty will be awarded $42,186.50 in attorney's fees and costs for this matter.

## I. BACKGROUND

The facts underlying this case are set forth in greater detail in the court's Memorandum Opinion of December 15, 2016. (Docket No. 55.) Carty is a former manager in Eastman's information technology department (Administrative Record ("AR") (Docket Nos. 18–27, 33) at 628) and is a beneficiary under the company's self-funded Long Term Disability ("LTD") Plan.

(Docket No. 1 ¶¶ 6, 9; Docket No. 6 ¶¶ 6, 9.) In March of 2013, he applied for LTD benefits, citing his bipolar disorder, anxiety, and depression. (AR at 628.) He was approved for LTD benefits beginning on June 8, 2013. (Docket No. 1 ¶ 17; Docket No. 6 ¶ 17.) A MetLife log shows that its claim specialists continued to monitor Carty's treatment and status at least every few months through early 2015. (AR at 731, 736, 747, 758, 771, 779–80, 788, 796, 803, 810, 819.) In March of 2015, a MetLife senior psychological clinical specialist recommended a full file review of Carty's claim, due apparently to the infrequency of Carty's visits with one of his treating professionals, clinical psychologist Dr. Edward Latham. (*Id.* at 818–19.) Carty was also under the regular care of a psychiatrist, Dr. Ronald Smith. (*Id.* at 173–75.)

By letter dated April 17, 2015, MetLife informed Carty that his LTD benefits were being terminated because his level of impairment no longer satisfied the Plan's definition of disability. (*Id.* at 231–32.) Carty appealed the decision. (AR at 81–190.) MetLife informed Carty by letter dated October 23, 2015, that it was upholding the termination of his benefits. (*Id.* at 4.) In the October 23, 2015 letter, MetLife echoed its earlier conclusion that Carty was no longer disabled, but also introduced a ground for termination that had not been clearly identified as a basis for the initial denial: that Carty was in violation of a provision of the Plan requiring him to receive "appropriate care and treatment." (*Id.* at 7.) Shortly thereafter, Carty filed his Complaint in this case (Docket No. 1) challenging MetLife's determination under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 *et seq.* ("ERISA"). The parties filed respective motions for judgment on the record (Docket Nos. 38, 40, 41).

The court granted Carty's motion and remanded the case to MetLife for reconsideration of Carty's challenge to the discontinuation of its benefits. (Docket No. 55.) The court described MetLife's initial denial letter as "fall[ing] far short of the clarity required to give Carty

appropriate notice of why his Plan had revised its position on his disability" and observed that the "somewhat clearer denial on appeal" consisted in large part of "simply reclassifying Carty's disabling symptoms, with little explanation, as related to his character rather than his underlying bipolar disorder." (*Id.* at 18.) The memorandum opinion also faulted MetLife's overreliance on two independent physician consultants, despite the fact that they had never examined Carty and their reports failed to "address[ ] the full array of potentially disabling symptoms identified by Dr. Smith and Dr. Latham." (*Id.*) The court ultimately concluded that MetLife acted arbitrarily and capriciously in concluding that Carty was no longer impaired and that he was not receiving appropriate care and treatment. (*Id.* at 21.) The court did not, however, grant Carty his preferred remedy, full approval of his ongoing LTD benefits. Instead, the court concluded that, while Carty had established that MetLife's consideration of his claim had been deficient, he had not definitively shown that he was entitled to continued benefits. The court therefore remanded to MetLife for reconsideration. (*Id.* at 21–22.)

Carty's motion for attorney's fees and costs followed shortly thereafter. (Docket No. 58.) Carty seeks a total of $55,153 in attorney's fees and costs, reflecting the following rates and hours expended:

| Biller/Cost | Rate | Hours | Total |
| --- | --- | --- | --- |
| Hudson T. Ellis (as associate) | $375/hr | 15.2 | $5,700 |
| Hudson T. Ellis (as partner) | $450/hr | 103.7 | $46,665 |
| Paralegal | $120/hr | 19.9 | $2,388 |
| Filing fees | $400 | N/A | $400 |

(Doc. No. 59-1.)

## II. ANALYSIS

### A. Entitlement to Fees

In an action by a beneficiary challenging a plan administrator's denial of benefits, the court has discretion to "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). ERISA does not require a litigant to establish that he is the "prevailing party" in order to be awarded fee-shifting. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). He must, however, demonstrate "some degree of success on the merits." *Id.* at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). There is no "presumption that attorney['s] fees should ordinarily be awarded to the prevailing plaintiff." *Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 376–77 (6th Cir. 2009) (quoting *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005)). Rather, the Sixth Circuit has identified five factors to guide a court's decision regarding whether to award attorney's fees in an ERISA case:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co.*, 618 F. App'x 246, 258 (6th Cir. 2015) (quoting *Majestic Star*, 581 F.3d at 376). These factors are "sometimes referred to in this circuit as the '*King* factors,'" *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996), after *Department of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Patrie*, 618 F. App's at 258. (quoting *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008)).

Carty argues that, although he did not succeed in convincing the court to directly reinstate his benefits, the reversal and remand that he did obtain reflect a degree of success on the merits sufficient to support an invocation of ERISA's fee-shifting provision. Indeed, the Supreme Court has expressly held that, in at least some cases, a claimant whose claim is remanded to the claims administrator may nevertheless be entitled to fee-shifting under ERISA. *Hardt*, 560 U.S. at 255–56. Although he did not prevail completely, Carty was vindicated in many of his arguments and obtained both a reversal of the discontinuation of his benefits and an admonishment to his plan administrator to perform an adequate review of his claim. Carty's success has therefore been more than "trivial" or a "purely procedural victory." *Id.* He is therefore entitled to fee-shifting if the five *King* factors support such an award.

*1. Bad faith/culpability*

The defendants argue that the first *King* factor weighs against an award of attorney's fees because Carty can point to no evidence that MetLife, at any point in its process, acted in bad faith. Carty counters that this factor looks not only to bad faith, but the broader question of a party's culpability in the actions underlying the litigation and that MetLife is culpable for the numerous failures in its review and in the reviews of its chosen physician consultants. Carty's argument is persuasive – MetLife bears the ultimate responsibility for the adequacy, integrity, and thoroughness of its claims review process, and it is difficult to conceive of why it is not ultimately culpable when that process fails. Although a showing of true bad faith might be *more* supportive of fee-shifting, the defendants are still more culpable than, for example, an administrator whose otherwise sound process warranted reversal based on a single inadvertent error. MetLife's processing of Carty's claim reflects breakdowns on multiple levels, including an initial denial letter that failed the most basic tests of clear, professional communication. A

plan administrator who makes such errors is culpable. This factor favors an award of fees and costs.

## 2. Ability to satisfy award

There is no dispute that the defendants could easily satisfy an award of fees and costs against them. As the defendants point out, however, the Sixth Circuit has suggested that "this factor is relevant 'more for exclusionary than for inclusionary purposes.'" *Patrie*, 618 Fed. App'x. at 259 (quoting *Warner v. DSM Pharma Chems. N. Am., Inc.*, 452 F. App'x 677, 682 (6th Cir. 2011)). It is difficult to imagine a benefits administrator that would be unable to satisfy an award of attorney's fees in a single case. Placing too much weight on this factor, then, would run counter to the rule that prevailing plaintiffs are not presumed to be entitled to fee-shifting as a matter of course. While this factor supports an award, the court will not give it undue weight.

## 3. Deterrent effect

The defendants argue that an award of attorney's fees in this case would have little effect, because there is no evidence that MetLife acted deliberately or in bad faith. *See Foltice*, 98 F.3d at 937 (6th Cir. 1996) ("[F]ee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing."). That argument, however, assumes that only deliberate misconduct can be meaningfully deterred. In appropriate cases, however, it may be appropriate to deter conduct that is, for example, reckless or negligent. Moreover, even a seemingly inadvertent error is often the result of a deliberate decision in the past: an inadequate file review, for example, may be the result of the deliberate decision not to devote sufficient resources to the claims process. That type of expedience can be deterred by attaching consequences to the resulting errors. Along these lines, the Sixth Circuit has already acknowledged that fee-shifting may be appropriate in order to encourage plan administrators to

6

"ensure that the opinions upon which they rely to make their decisions to terminate are based on a thorough review of the administrative record." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 645 (6th Cir. 2006). Such deterrence would be furthered by fee-shifting here.

The defendants' argument, moreover, reduces this factor to little more than a rehashing of the "bad faith" inquiry under the first *King* factor. The deterrence analysis differs, in that it looks beyond the parties themselves to the broader universe of similarly situated actors – here, other plan administrators – to determine whether it would be beneficial to award fee-shifting to deter similar conduct. *See Gaeth*, 538 F.3d at 531–32 (discussing *Moon*, 461 F.3d at 645). The thread tying MetLife's various errors together is a general lack of thoroughness – whether in drafting its denial, giving notice of the provisions on which it relied, or fully addressing all of the documented symptoms and opinions before it. It would serve the benefit system as a whole for such failures to be deterred in all administrators. This factor therefore favors fee-shifting.

*4. Common benefit/significant legal question*

Carty advances two arguments in favor of applying this factor in his favor: (1) his case has "serve[d] to further illustrate that ERISA's arbitrary and capricious standard is surmountable"; and (2) "MetLife is a frequent ERISA litigator," and "[a]ll ERISA beneficiaries benefit when frequent actors such as . . . MetLife are held to task." (Docket No. 59 at 5–6.) Both arguments stretch this factor beyond the point of usefulness. The ERISA field is replete with repeat-litigating plan administrators, and the arbitrary and capricious standard is a result of plan provisions that, though not universal, are pervasive.[1] While Carty's success in this litigation

---

[1] *See, e.g.*, *Nichols v. Unum Life Ins. Co. of Am.*, 192 F. App'x 498, 502 (6th Cir. 2006) (deciding ERISA case against Unum Life Insurance Company under the arbitrary and capricious standard); *Cass v. UNUM Life Ins. Co. of Am.*, No. 1:05-CV-567, 2008 WL 2705467, at *6 (S.D. Ohio July 9, 2008) (same); *Dosky v. Unum Life Ins. Co. of Am.*, No. 1:03CV2500, 2006 WL 435938, at *3 (N.D. Ohio Feb. 17, 2006) (same); *see also Cook v. Prudential Ins. Co. of Am.*, 494 F. App'x 599, 607 (6th Cir. 2012) (deciding ERISA case against Prudential Insurance Company of

may, in a sense, benefit the broader universe of potential claimants, that benefit is captured by the court's analysis of deterrence. Because Carty was litigating on behalf of only himself, and his case did not present any unique issues of law, this factor favors the defendants.

*5. Relative merits of the parties' positions*

On the final factor, Carty largely reiterates his argument on the issue of culpability, pointing out the various deficiencies in MetLife's decision-making process. The reasonableness of MetLife's position in this litigation, however, must be considered in the context of the highly deferential standard of review to which it was entitled. "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Watson* v. Solis, 693 F.3d 620, 623–24 (6th Cir. 2012) (quoting *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir.2011)). A court must accept an administrator's rational decision, if it is not arbitrary or capricious, "even in the face of an equally rational interpretation" offered by a participant. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (citing *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004)). Although MetLife was ultimately unavailing, it was not unreasonable or implausible to argue that its actions may have been sufficient to survive arbitrary and capricious review. Moreover, while Carty has had success here, it is still to be determined whether he or MetLife is ultimately correct about whether he is currently entitled to benefits.

Also relevant is that, on one key point of law, MetLife prevailed. Carty had argued in favor of an interpretation of the Plan's definition of disability that would have allowed him to categorically claim continued disability as long as he did not actually return to work in an

---

America under arbitrary and capricious standard); *Hardy v. Prudential Life Ins. Co. of Am.*, No. 3-14-0614, 2015 WL 5093249, at *1 (M.D. Tenn. Aug. 28, 2015) (same); *Kirkham v. Prudential Ins. Co. of Am.*, No. 1:09-CV-733, 2011 WL 1898944, at *3 (S.D. Ohio Mar. 11, 2011), *report and recommendation adopted*, No. 1:09CV733 WOB, 2011 WL 1885669 (S.D. Ohio May 18, 2011) (same).

8

adequately paying position, regardless of whether or not he continued to be incapable of doing so. (Docket No. 55 at 14–15.) The defendants argued that the Plan as a whole established that its definition of disability was tied to one's ability to work and that an individual could therefore cease to be disabled by becoming capable of performing an adequately paying job, even if he did not actually take such a job. (*Id.*) The court sided with the defendants, concluding that "[t]he structure, purpose, and other provisions of the Plan make clear that it is intended to reach beneficiaries who are not able to work due to an underlying condition." (*Id.* at 16.) Because the defendants were correct on a key, potentially determinative question in the case, and because their positions on the issues on which they did not prevail were still reasonably based on the underlying law, this factor does not significantly favor an award of fees and costs.

*6. Balancing*

The questions of culpability and deterrence significantly support an award of attorneys' fees in this case. While the other factors provide only limited support for fees, they also provide little by way of countervailing argument for why fees would not be appropriate. Accordingly, the court will award Carty reasonable attorney's fees and costs.

### B. Amount of Fees

The defendants argue that Carty's claimed attorney's fees should be denied or reduced because (1) they reflect unreasonable rates and (2) the time entries are excessive. Plaintiffs respond that their counsel's rates are ordinary for a partner-level (or, earlier in the matter, experienced associate) attorney in the specialized field of ERISA litigation and that the hours expended were reasonable in light of the large and complex record in the case and the issues presented.

*1. Legal Standard*

The party seeking an attorney's fee award pursuant to a statute has two main obligations: (1) to provide the court with "evidence supporting the hours worked and rates claimed" and (2) to demonstrate that the requested fee award is "reasonable." *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015); *Lance Coal Corp. v. Caudill*, 655 F. App'x 261, 262 (6th Cir. 2016). The starting point for determining the reasonableness of a requested fee is the "lodestar" analysis, whereby the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by a reasonable hourly rate. *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016). In determining whether a requested hourly rate is reasonable, the court looks to the "prevailing market rate in the relevant community" and considers the skill, experience, and reputation of the attorneys involved in the litigation. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). If the requested fee is essentially in line with the "lodestar," then there is a strong presumption that the requested fee is reasonable and recoverable. *Id.*

In addition to the lodestar analysis, the court should also consider any relevant "*Johnson*" factors and whether some adjustment to the award is required under those factors. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Those factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* The Sixth Circuit has recognized that, often, these factors are naturally blended into the reasonableness analysis. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002).

*2. Reasonableness of Rates*

Carty has claimed two attorney rates in this case: $375/hour for work performed by Hudson T. Ellis before Ellis made partner at his firm; and $450/hour for worked performed by Ellis after he became a junior partner. Carty argues that these rates are justified by Ellis's experience and the unique specialized skills needed to succeed in the challenging field of litigation on behalf of ERISA plan participants. The defendants dispute that Carty has established that rates at that level are reasonable in light of the prevailing rates in the relevant legal market and asks the court to adopt reduced rates of $200/hour for Ellis's work as an associate and $285/hour for his work as a partner. The defendants also seek a reduction in the rate for paralegal work in this matter from the claimed $120/hour to $75/hour, a rate that the defendants argue better reflects prevailing market rates.

The defendants argue first that the lodestar amount in this case should be calculated based on rates in Chattanooga, where Harris bases his practice, not the rates of this district or any other communities outside of the Chattanooga area. The Sixth Circuit, however, has made clear that, in determining the "prevailing market rate in the relevant community," courts should look to "that rate which lawyers of comparable skill and experience can reasonably expect to command *within the venue of the court of record.*" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013 ) (emphasis added) (quoting *Adcock-Ladd*, 227 F.3d at 350). Therefore, when an attorney "agree[s] to represent a plaintiff in an out-of-town lawsuit," the reasonable hourly rates that may be charged are those that competent counsel would command in the market where the

11

court sits. *Adcock-Ladd*, 227 F.3d at 350. The defendants' argument that the court should limit itself to evidence of Chattanooga rates, then, is unavailing.

The defendants argue next that, even if one looks beyond the Chattanooga area, Carty has failed to establish that Ellis's rates were reasonable. As the party seeking attorney's fees, Carty "bears the burden of proving the reasonableness of the hourly rates claimed." *Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011); *accord Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). When he first filed his motion for attorney's fees, Carty relied in significant part on an affidavit by Eric Buchanan, the president, owner, and senior partner of the firm at which Ellis is currently a junior partner and had previously been an associate. (Docket No. 59-3). The defendants understandably took issue with Carty's reliance on an affidavit from the owner of the same firm that provided his representation. (Docket No. 62 at 12.) In Carty's Reply, he introduced for the first time affidavits from outside attorneys who specialize in ERISA in support of Ellis's rate. (Docket Nos. 67-1 & 67-2.) Neither attorney is licensed in Tennessee or appears to practice substantially in this district. (Docket No. 67-1 at 1–2; Docket No. 67-2 at 1–2.)

Carty blames the lack of an appropriate local comparator on the general paucity of firms specializing in ERISA cases. The case law of this Circuit does acknowledge that a party seeking attorney's fees may be entitled to claim the rate of an "out-of-town specialist" if "(1) . . . hiring the out-of-town specialist was reasonable in the first instance, and (2) . . . the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir. 1982); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983)). Specialization, though, does not give an attorney free rein to claim his rates as reasonable merely

12

because his firm has deemed them so. *See Blum*, 465 U.S. at 895 n.11 (stating that all fee applicants must produce "satisfactory evidence . . . *in addition to* the attorney's own affidavits" that their requested rates are reasonable (emphasis added)); *Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings, Ltd.*, No. 3:03-0016, 2006 WL 5668244, at *7 (M.D. Tenn. Jan. 6, 2006) (noting that, in disputes over attorney's fees, outside affidavits should be given "more weight than the inherently self-serving declaration of the attorneys in question"). Carty's original reliance on the Buchanan affidavit, therefore, was not sufficient to establish that Ellis's rates were reasonable. Although the affidavits introduced with the Reply provide somewhat more support, their untimely introduction has left them unrebutted and therefore, at most, entitled to only limited weight. *See Cooper v. Shelby Cty., Tenn.*, No. 07-2283-STA-CGC, 2010 WL 3211677, at *3 (W.D. Tenn. Aug. 10, 2010) ("[A]rguments raised for the first time in a reply brief are generally not considered because such a practice deprives the non-moving party of its opportunity to address the new arguments.").

The court, then, must ultimately rely on its own experience and prior cases in this district to determine what would constitute a reasonable rate for this matter. Carty's claimed partner rate of $450/hour is well on the high end of rates this court has approved. *See, e.g.*, *Shoney's N. Am., LLC v. Smith & Thaxton, Inc.*, No. 3:12-CV-00625, 2015 WL 5139304, at *1 (M.D. Tenn. Sept. 1, 2015) (approving rates ranging from $195/hour to $360/hour as reasonable); *Savage v. City of Lewisburg, Tennessee*, No. 1:10-0120, 2015 WL 12791467, at *2 (M.D. Tenn. Feb. 24, 2015) (approving rate of $225/hour as reasonable); *McCutcheon v. Finkelstein Kern Steinberg & Cunningham*, No. 3-11-0696, 2013 WL 4521016, at *2 (M.D. Tenn. Aug. 27, 2013) ("[T]he prevailing market rate in the Middle District of Tennessee for experienced attorneys seeking recovery of attorney's fees under federal fee shifting statutes generally hovers between $250 and

$275 per hour."); *Carroll v. United Compucred Collections, Inc.*, No. 1:99-00152, 2008 WL 3001595, at *4 (M.D. Tenn. July 31, 2008) (approving rates of $500/hour and $450/hour for out-of-town specialist counsel in case where most attorneys billed for $300/hour or less); *EEOC v. Whirlpool Corp.*, No. 3:06-CV-0593, 2011 WL 3321291, at *5 (M.D. Tenn. Aug. 2, 2011) (holding that rates of $300/hour and $350/hour billed by attorney with thirty-one years' experience were unreasonable). Carty, though, has not established that this is a case that warrants inclusion in this highest tier of approved rates. Although the record involved was lengthy, the case itself was not unusually complex. Ellis has been an attorney for less than a decade and an ERISA specialist for even less. Carty's only argument that could support such a high rate is that ERISA is a unique and challenging field and that the considerable litigation disadvantages faced by claimants render it difficult to build a sustainable practice. Those factors may justify charging a premium, but not a premium as large as Ellis seeks. Based on the court's lengthy experience deciding attorney's fees motions in this district and adjudicating challenges under ERISA, the court concludes that a partner rate of $350/hour and an associate rate of $250/hour are reasonable in light of Carty's experience level, the specialized character of the field, and the complexity of the underlying case.

Carty's claimed rate for work performed by paralegals similarly exceeds the rates typically approved by the court. *See, e.g.*, *Lilly-Davis v. Rashid*, No. 3:12-CV-0224, 2014 WL 2683741, at *1 (M.D. Tenn. June 13, 2014) (approving $100/hour rate); *McCutcheon*, 2013 WL 4521016, at *1, *4 (M.D. Tenn. Aug. 27, 2013) (reducing paralegal rates from $135/hour to $75/hour). In its review of other awards and in its own experience, an hourly rate of $85 for work done by paralegals is reasonable for the Nashville market, and the court will reduce the rates charged accordingly. *See Occupy Nashville v. Haslam*, No. 3:11-cv-1037, 2015 WL

4727097, at *11 (M.D. Tenn. Aug. 10, 2015) (finding a rate of $105/hour for paralegal work was reasonable in a case in which the prevailing party produced exceptionally high-quality work in a short amount of time).

*3. Reasonableness of Hours Expended*

The defendants request a 10% reduction in the attorney hours claimed by Carty on the ground that the hours worked were excessive and/or duplicative. The only specific example that the defendants provide is that Carty's counsel "spent a total of 16.7 hours, over five different occasions, reviewing Plaintiff's 'file.'" (Docket No. 62 at 13.) Plaintiff's ERISA record in this case is over 1,000 pages long and includes both substantial medical records and detailed documentation of the claims process. It is unsurprising that, in a fact-intensive case such as this one, an attorney would need to review his client's file more than once, and sometimes for a lengthy period of time. Moreover, Ellis's total documented time – less than 120 hours – does not strike the court as unreasonable for the sole attorney on this matter.

The defendants also argue that the court should reduce the claimed paralegal hours on the ground that, "[a]lthough reasonable fees may be awarded for paralegal work, fees cannot be recovered for purely clerical or secretarial tasks." *Osborne v. Nicholas Fin., Inc.*, No. 3-12-0185, 2015 WL 366126, at *1 (M.D. Tenn. Jan. 27, 2015) (citations omitted). Based on the court's review, the tasks that the defendants deem purely clerical appear to be related to maintaining an appropriate litigation file for this matter – a responsibility requiring enough legal acumen and understanding that it rises above purely clerical. The court will therefore approve the paralegal hours, to be billed at the revised rate determined by the court.

*4. Final calculation of fees*

As amended by the court, the fees to which Carty is entitled are as follows:

| Biller/Cost | Original Rate | Revised Rate | Hours | Total |
|---|---|---|---|---|
| Hudson T. Ellis (as associate) | $375/hr | $250/hr | 15.2 | $3800 |
| Hudson T. Ellis (as partner) | $450/hr | $350/hr | 103.7 | $36,295 |
| Paralegal | $120/hr | $85/hr | 19.9 | $1691.50 |
| Filing fees | $400 | N/A | N/A | $400 |

The resulting fees and costs amount to $42,186.50.

## **CONCLUSION**

For the foregoing reasons, Carty's Motion for Attorneys Fees will be granted in the amount of $42,186.50.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge