UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY CARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:15-cv-01186 |
| ) | Judge Aleta A. Trauger |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY, EASTMAN CHEMICAL ) | |
| COMPANY WELFARE BENEFIT ) | |
| PROGRAM, and EASTMAN CHEMICAL ) | |
| COMPANY, as Plan Administrator for the ) | |
| EASTMAN CHEMICAL COMPANY ) | |
| WELFARE BENEFIT PROGRAM, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND PROTECTIVE ORDER

Metropolitan Life Insurance Company ("MetLife"), has filed a Motion to Quash Subpoena and/or Motion for Protective Order (Docket No. 81), to which Gary Carty has filed a Response (Docket No. 86). Carty has filed a Motion for Sanctions Related to Defendants' Breach of the Court's Scheduling Order and Due Process Violations (Docket No. 87), to which MetLife has filed a Response (Docket No. 88), as have the other named defendants in this case (Docket No. 89). For the reasons set out herein, MetLife's motion will be granted in part and denied in part, and Carty's motion will be granted in part and denied in part.

## BACKGROUND

MetLife is the claims administrator for a long term disability ("LTD") benefits plan offered by Carty's former employer, the Eastman Chemical Company ("Eastman"). Carty was approved for LTD benefits beginning on June 8, 2013. (Docket No. 1 ¶ 17; Docket No. 10 ¶ 17.)

1

MetLife terminated Carty's benefits by letter dated April 17, 2015. (*Id.* at ¶ 18.) Carty exhausted his administrative appeals and filed the instant action, challenging the cessation of his benefits under the civil enforcement provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1132 *et seq.* ("ERISA"). (*Id.* at ¶¶ 20–21.)

Before leaving work due to his disability, Carty was a manager in Eastman Chemical Company's information technology department. (Docket Nos. 17–27 (Administrative Record) at 628.) According to Eastman's job description for the position, Carty's responsibilities "include[d] understanding how IT-related capabilities enable business processes" and "design[ing], develop[ing] and deploy[ing] the necessary software and/or hardware solution to fulfill [business] requirements." *(Id.* at 620.) His salary was $126,200 per year. (*Id.* at 592.) His long-term disability claim form indicates that he suffers from bipolar disorder, anxiety, and depression, for which he was first treated in October of 2011 and which resulted in his eventual disability on November 28, 2012. (*Id.* at 628.)

Carty submitted his paperwork seeking LTD benefits on March 8, 2013. (*Id.* at 591.) MetLife engaged in a review of Carty's claim that involved both interviewing Carty and reviewing medical records and information. (*Id.* at 643–90.) The log of MetLife's processing of the claim shows that, on April 21, 2013, a MetLife claims specialist reached the initial claim decision that Carty's condition resulted in his "inability . . . to perform the duties of his job" and that his claim would therefore be approved. (*Id.* at 690.) Carty was informed that his claim was approved by letter of May 29, 2013. (*Id.* at 469.) MetLife's log shows that its claim specialists continued to monitor Carty's treatment and status at least every few months through early 2015. (*Id.* at 731, 736, 747, 758, 771, 779–80, 788, 796, 803, 810, 819.)

In March of 2015, MetLife senior psychological clinical specialist Kenneth Lemelle recommended a full file review of Carty's claim, due apparently to the infrequency of Carty's visits with his therapist. (*Id.* at 818–19.) Following a brief period of investigation and review, MetLife informed Carty, by letter dated April 17, 2015, that his LTD benefits were being terminated because he no longer satisfied the plan's definition of disability. (*Id.* at 232.) Carty appealed. (*Id.* at 81–190.) By letter dated October 23, 2015, MetLife informed Carty that it was upholding the termination of his benefits. (*Id.* at 4.) On November 9, 2015, Carty filed his Complaint in this case. (Docket No. 1.)

The parties filed respective motions for judgment on the record. (Docket Nos. 38, 40–41.) On December 15, 2016, the court granted Carty's motion. (Docket No. 56.) The court, however, based its ruling on flaws in MetLife's decision-making process and did not rule that the decision to discontinue Carty's benefits was, as a matter of law, incorrect. Accordingly, the court remanded the case to MetLife for further consideration. (Docket No. 55 at 21–22.)

On October 30, 2017, Carty filed a Motion to Reopen Case. (Docket No. 71.) He argued that MetLife had failed to act on his case in a reasonably timely manner following remand. (*Id.*) Shortly thereafter, in a letter dated November 14, 2017, MetLife informed Carty that it was again denying his benefits. On November 20, 2017, the court granted the still-pending Motion to Reopen. (Docket No. 76.) After a status conference, the court entered a Scheduling Order on December 19, 2017. (Docket No. 80). The Scheduling Order set forth the following timeline for Carty to appeal his new denial, during which the case would remain open:

1. Carty shall have sixty (60) days from the entry of this order to appeal MetLife's benefits determination. Carty may include the reason(s) he believes the claim was improperly denied and submit any additional information, documents, or records that he believes are necessary for MetLife to consider.

3

2. Following the submission of Carty's appeal, MetLife shall have sixty (60) days to review Carty's submission and make a determination regarding Carty's long term disability benefits.

3. If, during the course of MetLife's review, it obtains additional or new information, other than what was submitted by . . . Carty, the information shall be provided to Carty's counsel, and Carty shall have forty-five (45) days to respond to that information. If Carty elects to submit such rebuttal information, MetLife's deadline to render a determination shall be tolled until it receives such information from Carty.

(*Id.* at 1–2.)

As contemplated by the Scheduling Order, Carty appealed the denial. In the course of the resulting review, MetLife engaged Dr. B. Charles Ihrig, a licensed clinical psychologist, to serve as an independent medical examiner ("IME"). Dr. Ihrig drafted a report, which MetLife provided to Carty. In response, Carty submitted additional materials for Dr. Ihrig to review. Based on his review of the materials Carty provided, Ihrig drafted an addendum to his report. In the addendum, Dr. Ihrig wrote that that the additional information did not change his prior conclusions, but he followed that statement with a number of "explanations and caveats." (Docket No. 83-1 at 2.) Over the course of several paragraphs, Dr. Ihrig conceded that Carty's "major mental illness . . . has affected him broadly and likely cognitively" and "documentation in the last year appears to support the possibility that he may only be capable of part time employment." (*Id.* at 3.) MetLife, however, did not send the addendum to Carty for further supplementation or rebuttal, as contemplated by the Scheduling Order, prior to resolution of the appeal. By letter dated May 30, 2018, MetLife informed Carty that it was upholding the denial of benefits.

MetLife sent Carty his file, which included the Ihrig addendum. Carty subsequently informed MetLife that he intended to depose Dr. Ihrig. Carty explained that he viewed MetLife's failure to provide him with Dr. Ihrig's addendum as a violation of the Scheduling Order, for

which Carty considered deposing Dr. Ihrig an appropriate remedy. On July 9, 2018, Carty issued a notice of deposition and subpoena to Dr. Ihrig, demanding, in addition to the deposition itself, that Dr. Ihrig produce all documents provided to him by MetLife related to the IME review and all correspondence between Ihrig and MetLife regarding Carty. (Docket No. 81-4.) On July 23, 2018, MetLife filed a Motion to Quash Subpoena and/or Motion for Protective Order. (Docket No. 81.)

## **ANALYSIS**

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). Federal Rule of Civil Procedure 45(d)(3)(A) requires the court to grant a motion to quash or modify any subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

Generally speaking, "[o]nly the party to whom the subpoena is directed has standing to oppose it." *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013) (citing *Hackmann v. Auto Owners, Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314 (S.D. Ohio Feb. 6, 2009)). Accordingly, "as a general rule, a party has no standing to seek to quash a subpoena directed to a non-party." *United States v. Wells*, No. 06-

10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)).

A party may object to a non-party subpoena, however, if the movant asserts a "personal interest or claim of privilege in the information sought." *Nalls v. Napolean*, No. CIV.A. 11-12670, 2015 WL 1849524, at *1 (E.D. Mich. Apr. 22, 2015) (internal quotation marks omitted) (citing *Mann v. Univ. of Cincinnati*, Nos. 95–3195; 95–3292, 1997 WL 280188, at *4 (6th Cir. May 27, 1997)). The question of what amounts to a sufficient "personal interest" to confer standing under Rule 45 does not appear to have a single, definitive answer under the case law of the Sixth Circuit. However, "[s]uch rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records." *Davis*, 2013 WL 146362, at *5 (citing *Hackmann*, 2009 WL 330314, at *1).

MetLife argues that it has standing to move to quash the subpoena because its correspondence with Dr. Ihrig is "confidential and proprietary and MetLife has a personal right and interest in such information." (Docket No. 82 at 3.) MetLife has provided no authority whatsoever to support its claim to have any kind of enforceable right or privilege with regard to the covered correspondence.[1] Rule 45 requires more than "bald statements that the material demanded" is sufficient to confer standing. *Hackmann*, 2009 WL 330314, at *2. As the party seeking to quash the subpoena, moreover, MetLife bears the burden of establishing that the prerequisites for doing so have been met. *Olivia Marie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. CIV.A. 11-12394, 2011 WL 6739400, at *2 (E.D. Mich. Dec. 22, 2011) ("The party seeking to quash a subpoena bears a heavy burden of proof.") (citing *Irons v. Karceski*, 74 F.3d 1262,

---

[1] Although Carty may doubt its accuracy, Dr. Ihrig's supplement does set out the additional materials submitted to Dr. Ihrig by MetLife for Dr. Ihrig's further review. (Docket No. 83-1 at 1.)

1264 (D.C. Cir. 1995)). Without providing more detail about the type of interest it actually asserts in the correspondence, MetLife has not established standing under Rule 45.

MetLife argues that, if the court holds that MetLife lacks standing under Rule 45, the court should instead grant MetLife relief in the form of a protective order pursuant to Federal Rule of Civil Procedure 26(c). *See Fleet Bus. Credit Corp. v. Hill City Oil Co.*, No. 01-2417-GV, 2002 WL 1483879, at *2 (W.D. Tenn. June 26, 2002) (recognizing that courts have held that a party without standing to file a motion to quash may seek to limit third-party discovery under Rule 26(c)) (citations omitted). Rule 26(c) authorizes the court to issue a protective order, for good cause, in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The protective order may, *inter alia*, "forbid[] the disclosure or discovery" sought, "prescrib[e] a discovery method other than the one selected by the party seeking discovery," "requir[e] that a deposition be sealed and opened only on court order," or "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A), (C), (F), (G). Rule 26 provides a mechanism for protection from discovery, but here provides no independent rationale justifying the protection.[2]

MetLife argues first that Carty should not be permitted to depose Dr. Ihrig because any challenge to Carty's denial of benefits under ERISA must be "confined to the record that was before the Plan Administrator," *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir.1997); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)), rendering any deposition irrelevant and

---

[2] Whether Federal Rule of Civil Procedure 26(b)(4) protection for trial preparation materials applies to IME materials in the ERISA context, 29 C.F.R. § 2560.503-1(h)(3)(iii), is questionable. However, MetLife has not "expressly made the claim" of this privilege as required under (b)(5)(A)(i), so the court presumes that this is not the basis for any claim of privilege being made by MetLife.

unnecessary. MetLife concedes that an exception to the rule forbidding supplemental evidence exists if the consideration of supplemental evidence is "necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* at 618 (Gilman, J., concurring) (citing *VanderKlok v. Provident Life & Accident Ins. Co., Inc.*, 956 F.2d 610, 617 (6th Cir. 1992)). MetLife argues, however, that Carty has not challenged his denial of benefits on any ground that would warrant departure from the administrative record.

Carty counters by arguing that his due process rights were violated by MetLife's alleged violation of the court's Scheduling Order. Even assuming that violating the court's Scheduling Order would amount to a denial of due process, however, it does not follow that Carty is necessarily entitled to depose Dr. Ihrig. Generally speaking, presentation of supplemental evidence will be "necessary to resolve" a challenge based on an alleged violation of due process if the supplemental evidence will either (1) document the violation and/or the degree of prejudice suffered by the beneficiary, *see Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 418 (W.D. Ky. 2015), or (2) serve as a remedy to the violation because the violation itself prevented the presentation of the relevant evidence below, *see VanderKlok*, 956 F.2d at 617. The first of those grounds is unavailable here, because there does not appear to be a dispute, between the parties, about what MetLife provided to Carty and what it did not. If Carty had raised a due process issue that would require additional testimony to confirm, then permitting a deposition might be appropriate. *See Gluc*, 309 F.R.D. at 418) ("A number of decisions appear to permit such depositions when they are specifically limited to the issues of conflict of interest, bias or a due process violation.") (collecting cases). Here, however, additional testimony is unnecessary to confirm the violation alleged.

8

Carty argues that, even if a deposition is unnecessary to document the alleged violation, the deposition is an appropriate remedy. Carty likens this case to *VanderKlok v. Provident Life & Accident Insurance Co., Inc.*, in which the Sixth Circuit ruled that an ERISA beneficiary would be permitted to supplement the record with evidence that he would have submitted but for the plan administrator's denying him the appropriate notice. 956 F.2d at 617. The court concluded that allowing supplementation of the record was appropriate because (1) the administrator's due process violation justified a loosening of the protections afforded to the administrator by ERISA and (2) supplementation at the district court level would avoid an unnecessary remand. *Id.* The remedy ordered in *VanderKlok*, however, was considerably more limited than Carty is seeking here. The beneficiary in *VanderKlok* was simply allowed to file his desired supplemental evidence at the district court level. The equivalent to that remedy, in this case, would be for Carty to be allowed to file whatever he would have provided in response to Dr. Ihrig's addendum. Here, however, Carty seeks a full deposition of Dr. Ihrig and the production of what might be a great deal of documentation. The rule of *VanderKlok* would not support such a significant step.

Carty's subpoena, therefore, seeks information that will be categorically irrelevant to his actual challenge cognizable in this court under ERISA. Because Dr. Ihrig has not himself sought to have the subpoena quashed, the court will not formally quash it. The court, however, by this Protective Order, will suspend all obligations to comply with the subpoena indefinitely.

The fact that a deposition of Dr. Ihrig is not the appropriate remedy to this situation, however, does not leave Carty without recourse. Carty has also filed a Motion for Sanctions against MetLife.[3] (Docket No. 87.) By failing to afford Carty the opportunity to respond to Dr.

---

[3] Carty initially sought sanctions against the defendants generally, but has since withdrawn that request as to Eastman. (Docket No. 90.)

Ihrig's lengthy addendum, MetLife violated the clear terms of this court's Scheduling Order. MetLife argues that it had no obligation, under the Scheduling Order, to allow Carty to respond because Dr. Ihrig's addendum "did not contain any new or additional information." (Docket No. 82 at 6.) MetLife's argument appears to be that, because Dr. Ihrig nominally did not change his ultimate conclusion, his addendum did not consist of "new information"—even though it included a lengthy analysis adding caveats to and clarifying that earlier conclusion. The language of the Scheduling Order does not support such a reading. MetLife had an obligation to divulge all "new information" assembled "during the course of MetLife's review." (Docket No. 80 at 1.) Nowhere does the court provide any exception based on the fact that the new information did not result in a revised conclusion. Dr. Ihrig's addendum plainly consists of new information assembled in the course of the review, and denying Carty the opportunity to respond deprived him of a right to which he was entitled under the court's order.

Carty argues that allowing him to depose Dr. Ihrig would be an appropriate sanction for the violation of the Scheduling Order. As the court has already explained, such a deposition is unnecessary to address MetLife's violation. The court, however, has a wide array of options when a party fails to comply with an order to disclose certain information. *See* Fed. R. Civ. P. 37(b)(2). Of those options, the one best suited to the situation currently presented is the court's power to "stay[] further proceedings until [its] order is obeyed." Fed. R. Civ. P. 37(b)(2)(A)(iv). This court agrees with the *VanderKlok* court that, where a beneficiary was deprived of the opportunity to supplement the record, the best remedy, where possible, is to revive his opportunity to do so. *See VanderKlok*, 956 F.2d at 617.

The *VanderKlok* court opted to allow the beneficiary to supplement the record at the district court level. That court, acknowledged, however, that doing so was something of a

10

departure from the structure ordinarily envisioned by ERISA. Moreover, allowing supplementation in this court would not, in this instance, afford Carty the process to which he was entitled. The purpose of the Scheduling Order was to govern how the parties would proceed throughout Carty's appeal. That is the level at which Carty had the right to supplement the record. The court, accordingly, will stay all proceedings at the district court level and order MetLife to allow Carty to supplement his record on his appeal, after which time MetLife shall be required to satisfy its obligation, under the Scheduling Order, of issuing a superseding determination of eligibility in light of the full record to which Carty was entitled.[4]

Finally, Carty asked the court to address MetLife's failure to provide the addendum not only as a violation of the court's Scheduling Order, but as a denial of due process. Such an argument, however, would appropriately be raised as part of a challenge to MetLife's determination under ERISA, not a motion for sanctions. In any event, this Order will allow Carty to respond to the addendum, providing a sufficient remedy to any procedural error.

## CONCLUSION

For the foregoing reasons, MetLife's Motion to Quash Subpoena and/or Motion for Protective Order (Docket No. 81) is hereby **GRANTED** in part and **DENIED** in part. It is hereby **ORDERED** that all obligations under the subpoena issued to Dr. B. Charles Ihrig are suspended pending any further order of the court. Carty's Motion for Sanctions Related to Defendants' Breach of the Court's Scheduling Order and Due Process Violations (Docket No. 87) is **GRANTED** in part. Proceedings in this case are **STAYED**, and MetLife is **ORDERED** to allow Carty to file supplemental materials in his administrative appeal within 30 days of this

---

[4] The court does not find it necessary to order the payment of any costs or attorney's fees on top of the sanctions ordered. Insofar as this situation has resulted in the accumulation of unnecessary costs, both parties bear some of the responsibility—MetLife, for violating the court's Scheduling Order, and Carty, for seeking an unnecessary deposition. The court, accordingly, will rule that each party shall bear its own costs at this juncture.

11

Order, after which MetLife is **ORDERED** to make a revised determination regarding Carty's long term disability benefits within 30 days.

It is so **ORDERED**.

ENTER this 14th day of August 2018.

_____
ALETA A. TRAUGER
United States District Judge